NO. 07-01-0050-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 4, 2002

_____


ARAMARK HEALTHCARE SUPPORT SERVICES, INC.,

d/b/a METHODIST HOSPITAL CAFETERIA AND FOOD SERVICE, APPELLANT

V.

WILDA WISDOM, APPELLEE


_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 98-501,815; HONORABLE BLAIR CHERRY, JUDGE

_____

Before BOYD, C.J., and QUINN and REAVIS, JJ.

Appellant Aramark Healthcare Support Services, Inc., d/b/a Methodist Hospital Cafeteria and Food Service Inc. (Aramark) appeals a judgment following a jury trial that appellee Wilda Wisdom recover $198,634.37 from Aramark as her damages following a slip and fall accident on the premises of Aramark. By six issues, Aramark contends that

(1) the trial court abused its discretion in allowing a nurse to give expert testimony that the medical expenses incurred were reasonable, (2) the trial court abused its discretion in allowing a nurse to give expert testimony that the medical expenses were necessarily incurred as a result of the occurrence, (3) the evidence was insufficient to support the jury's finding that the medical treatment given and the expenses incurred were necessary as a result of the occurrence, (4) the evidence was insufficient to support the jury's findings that the condition of the premises posed an unreasonable risk of harm, (5) the evidence was insufficient to support the jury's finding that Aramark knew or should have known of the condition, (6) the trial court abused its discretion in denying the motion to remit damages because Wisdom's pleadings do not support the jury's award of damages. Based upon the rationale expressed herein, we reverse and remand in part and affirm in part.

On March 11, 1997, Wisdom sustained injuries when she fell in a cafeteria operated by Aramark while visiting her husband at Methodist Hospital. In addition to housing a cafeteria, the facility also includes other food service facilities, *i.e.* Burger King, Chick Fil-A, pizza, and a salad bar. When she entered the food service area, Wisdom walked through the area to survey the choices of food. After walking twice by the food service outlets and a cardboard advertisement sign[1] near the salad bar, Wisdom selected an entree. As she

---

[1]The sign was a full size replica of a Star Wars character advertising the Star Wars Trilogy and Lays Potato Chips held up by a wing, perpendicular to image, running along the back side almost the entire length and protruding out several inches from the flat

2

was walking to the checkout counter at the opposite end of the cafeteria area, she tripped on the cardboard sign that had fallen on the floor near the salad bar.  Wisdom suffered injuries to her elbow and back causing her to incur medical expenses in excess of $100,000 and to miss almost a year of work.

By its first issue, Aramark contends that the trial court abused its discretion in allowing a nurse to give expert testimony that the medical expenses incurred were reasonable, and by its second issue, it contends that the trial court abused its discretion in allowing a nurse to give expert testimony that the medical expenses were necessarily incurred as a result of the occurrence in question.

In order to preserve a complaint for appellate review, a party must distinctly specify an objection to the trial court. Tex. R. Evid. 103(a)(1); Tex. R. App. P. 33.1(a); St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., 917 S.W.2d 29, 45 (Tex.App.--Amarillo 1995, *aff'd in part and rev'd in part,* 974 S.W.2d 51 (Tex. 1998)).  The purpose of an objection is two-fold: (1) to notify the trial judge and the other party of the complaint; and (2) to preserve the complaint for appellate review.  *See* Wilkerson v. Pic Realty Corp., 590 S.W.2d 780, 782 (Tex.Civ.App.--Houston [14th Dist.] 1979, no writ).  Because Aramark's brief does not provide a reference to the record where it presented its objection to the trial court as required by Texas Rules of Appellate Procedure 38.1(f) and (h), we will examine

---

surface.

the portion of the record which contains the testimony of Nurse Wintroath, according to the reference provided by counsel during oral argument.

Q. (By Mr. Simpson). I want to show you what has been marked as Plaintiff's Exhibit Number 1 and ask you if you recognize that.

A. I do.

Q. And would you tell the ladies and gentlemen of the jury what that is?

A. This is a list of or a summary of bills that have been accrued by Ms. Wisdom since her injury and–bills.

Q. All right. And the charges that are reflected there, did you see bills that match up with those charges?

\* \* \*

Mr. Whiteside: Well, I don't think she–I don't think a nurse practitioner or a case manager is qualified to render a medical decision. She can testify, perhaps, as to the reasonableness of the bills, but can't testify to whether or not the bills were made necessary or are necessary, as a result of the treatment, to treat the particular condition in question, because she is not a medical doctor.

\* \* \*

Q. (By Mr. Simpson:) Ms. Wintroath, do you have an opinion as to whether or not the charges that are reflected there are reasonable charges for the Lubbock area?

A. Yes, they are.

Mr. Simpson: Your Honor, we will offer this exhibit later when Ms. Wisdom testifies. We will lay the rest of the foundation. That is all we have of this witness.

\* \* \*

4

Cross Examination

* * *

Q. But that is all you are saying. You are not saying these charges were made necessary as a result of this accident?

A. No, I am not saying that.

* * *

Q. . . .You are just saying he is going to bill for whatever he did?

A. Yes. I am saying that the charges that I reviewed were reasonable charges for the procedures that were done.

Q. Okay. That is fair enough.

According to the above record, Aramark did not make any objection to the testimony of the nurse that the charges for the medical procedures were reasonable. Indeed, it appears that trial counsel agreed that she could testify as to the reasonableness of the medical fees and expenses. Therefore, issue one presents nothing for review. Additionally, regarding issue two, the record also demonstrates that the nurse clarified her testimony and ultimately testified that she was not expressing any opinion as to medical necessity, which prompted Aramark's counsel's response, "[t]hat is fair enough." Therefore issue two presents nothing for review, and accordingly, issues one and two are overruled.

By issue three, Aramark contends that the evidence was insufficient to support the jury's finding that the medical treatment given and expenses incurred were necessary as

a result of the occurrence.[2]  In reviewing a factual insufficiency challenge, we must consider and weigh all the evidence in support of the jury finding and set it aside only if it is so contrary to the overwhelming weight of the evidence as to be manifestly unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); Williams v. Gaines, 943 S.W.2d 185, 191 (Tex.App.--Amarillo 1997, writ denied).  As an appellate court we cannot retry the case or otherwise substitute our judgment for that of the trier of fact.  Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998), *cert. denied*, 525 U.S. 1017, 119 S. Ct. 541. 142 L. Ed.2d 450 (1998); *see also* Mohnke v. Greenwood, 915 S.W.2d 585, 589 (Tex.App.–Houston [14th Dist.] 1996, no writ).  In our review, we must first consider, weigh, and examine all of the evidence which supports and which is contrary to the jury's determination. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).

Because Aramark did not call any witnesses during the trial and did not introduce any evidence that the medical treatment given and the expenses incurred were not necessary as a result of the occurrence, the jury was not required to weigh conflicting evidence.  Evidence supporting the jury verdict comes from several sources.  First, during his examination of Nurse Wintroath, counsel for Wisdom told the judge that he would offer exhibit one, which the nurse referenced in her testimony, during the examination of Wisdom.  At the conclusion of Wisdom's testimony, the record shows the following:

---

[2]By its argument, Aramark only challenges the factual sufficiency of the evidence.

Mr. Simpson: . . . At this time, Your Honor, after the testimony of Ms. Wintroath, Ms. Wisdom, and Dr. Johnson, we would offer Plaintiff's Exhibit Number 1 into evidence, which is our bills.

\* \* \*

Mr. Whiteside: My concern has been, for example, Judge, that Dr. Naga Bushan, M.D., is listed, that he treated her from 2/3/98 to 7/6 of 2000 for $6,043, and we haven't heard anything about Dr. Bushan.

And I have got – I got – I guess, if you could just give me some time on this . . . . In other words, I don't think I have heard any testimony about the relationship between anything Dr. Bushan did and this injury. . . . Could we have some time to resolve this?

\* \* \*

The Court: Is there any place–evidence with regard to Dr. Bushan?

Mr. Simpson: We will clean that up. If it is not related, we will take it out.

The Court: All right. Subject to that, we will admit it, but I think, perhaps, maybe the first thing in the morning, we can do that.

Mr. Simpson: And one other thing, Your Honor, I would like to offer into evidence Plaintiff's Exhibit Number 7, which is the letter that Dr. Johnson wrote to us. I think I am on 7.

The Court: Yes.

Mr. Whiteside: No objection.

The Court: It will be admitted.

Then, when trial commenced the next morning, the record shows that exhibit one, as modified was admitted into evidence.

7

Mr. Simpson: Also, with regard to Dr. Bushan's bills that were in question, we took those out of our index.

The Court: All right. And that solves Mr. Whiteside's objection?

Mr. Whiteside: Yes, sir.

Plaintiff's exhibit one, as modified to satisfy counsel's objection, was a list of hospital and physicians' services and charges for services rendered to Wisdom, totaling $112,523.11. Wintroath testified about the reasonableness of the fees and charges. By his letter of December 6, 1999, which was admitted into evidence without objection, Dr. Johnson expressed his opinion that, after reviewing his chart, the fall of March 11 was a direct cause of the injuries which prompted Wisdom's surgeries. Moreover, Dr. Johnson, testifying by deposition, stated that the surgeries by Dr. George and Dr. Gill were a direct result and were necessary. Considering the summary of the medical services and expenses described in exhibit one along with Dr. Johnson's letter and testimony, we conclude that the jury's finding is not so contrary to the overwhelming weight of the evidence as to be manifestly unjust. Issue three is overruled.

By its fourth and fifth issues, Aramark contends that the evidence was insufficient to support the jury's finding that the condition of the premises posed an unreasonable risk of harm and that it knew or should have known of the condition. We disagree. By its arguments Aramark contends that there is no evidence to support the jury findings on these two issues. However, because Aramark adopts the factual sufficiency standard of review

set out in its third issue, we will not consider the issues as a challenge to the legal sufficiency.

The evidence on these issues is not conflicting because Aramark did not introduce any evidence that the condition of the premises did not pose an unreasonable risk of harm or that Aramark did not know or should not have known of the condition of the premises. The sign was introduced into evidence and described as a man-sized character, which was free-standing and not affixed to a wall or otherwise secured to prevent it from being knocked over by visitors to the cafeteria. Joann Gonzales, a cashier at the cafeteria, testified that the sign had been knocked over before the incident and that the fallen sign would be dangerous to someone carrying a tray. She also testified that before Wisdom fell, she called over the intercom for someone to come and pick up the sign but Wisdom fell before it was moved. Although uncertain, Gonzales had a vague recollection that Wisdom may have brushed the sign while making her food selection causing the sign to fall. However, according to her testimony, Wisdom stated that she did not knock the sign over and did not see it on the floor.

Ida Johnson, the manager of the cafeteria, went to the scene of the accident. She testified that it appeared that someone had tripped over the sign and that if it was on the floor in the traffic pattern, the sign would represent a danger to the customers in the cafeteria. There being no evidence to the contrary, we conclude that the evidence is not

9

so contrary to the overwhelming weight of the evidence as to be manifestly unjust. Issues four and five are overruled.

By their sixth issue, Aramark contends that the trial court abused its discretion in denying the motion to remit damages because Wisdom's pleadings do not support the amount of the jury award. We agree. Generally, a judgment for damages in excess of the amount sought by the pleadings is error. *See* Tex. R. Civ. P. 301; Employers Ins. of Wausau v. Schaefer, 662 S.W.2d 414, 419 (Tex.App.--Corpus Christi 1983, no writ). Wisdom's live pleadings requested only $105,000 in past medical expenses, but the jury awarded $112,523.11. Accordingly, the trial court should not have rendered judgment for an amount in excess of what Wisdom requested in her trial pleadings. Picon Transp.,Inc. v. Pomerantz, 814 S.W.2d 489, 491 (Tex.App.–Dallas 1991, writ denied). The judgment for past medical expenses in excess of the $105,000 sought by Wisdom is erroneous, and the trial court erred in denying Aramark's motion for remittitur. Aramark's sixth issue is sustained.

Accordingly, we reverse that portion of the judgment awarding Wisdom recovery for past medical and hospital care in excess of $105,000, and the cause is remanded to the trial court for recomputation of the total award, including prejudgment and postjudgment interest; in all other respects, the judgment is affirmed.

Don H. Reavis

10

Justice

Do not publish.